STEVEN G. KALAR
Federal Public Defender
Northern District of California
DAVID W. RIZK
Assistant Federal Public Defender
19th Floor Federal Building - Box 36106
450 Golden Gate Avenue
San Francisco, CA 94102
Telephone:   (415) 436-7700
Facsimile:   (415) 436-7706
Email:        David_Rizk@fd.org

Counsel for Defendant PONCE

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>ANTHONY PONCE,<br><br>Defendant. | **Case No.:** CR 19–0044 WHO<br><br>**DEFENDANT'S SENTENCING MEMO AND REQUEST FOR DOWNWARD VARIANCE** |

### I.   INTRODUCTION

Anthony Ponce will soon be before the Court for sentencing and graduation from the Court's Alternatives to Incarceration Program (ATIP). Mr. Ponce's turnaround with the Court's assistance during the pendency of this case has been remarkable. Reached by defense counsel on a recent afternoon, Mr. Ponce was making coffee for himself after work. He was reflective, insightful, relaxed, and happy. The contrast to his demeanor and well-being at the initiation of this case could not be starker. When Mr. Ponce made his initial appearance in this matter, he was in primary state custody serving time for a probation violation arising from the same arrest that led to this case. He had been heavily abusing methamphetamine and heroin for over 20 years and had been in and out of state custody, often serving significant sentences for serious crimes, for just as long, largely due to his

addiction. He was extremely agitated, anxious to the point of distraction, and unable to even help himself until he finished his state sentence. Now, since his state probation was discharged in September, he is no longer on state supervision for the first time since the 1990s. Mr. Ponce is sober, employed, closer to his family, well-adjusted, and looking forward to the future. He is deeply thankful to Judge Breyer, Judge Orrick, Judge Corley, the rest of the ATIP team, and the government, for the opportunity to turn his life around. In order to continue his path toward a positive and productive life, Mr. Ponce now respectfully asks for a significant downward variance to a sentence of three years of probation.

## II.     BACKGROUND

Mr. Ponce was born in the Philippines in 1971. Presentence Report (PSR) ¶ 53. Mr. Ponce lived in a difficult situation with his father, who drank too much and was physically abusive, in the Philippines until he was eight years old. PSR ¶¶ 53-54. Mr. Ponce moved to Daly City with his mother, sister, and grandmother in approximately 1980. PSR ¶ 54. His mother worked too hard to provide him with stability and supervision and Mr. Ponce transferred repeatedly between high schools before dropping out. PSR ¶¶ 54, 68. At age 25, he married a woman from the Philippines and had a son, but the relationship ended unhappily two years later. *Id.* ¶ 56.

Almost immediately after the demise of the relationship, Mr. Ponce began abusing methamphetamine to alleviate his unhappiness. *Id.* ¶ 65. Methamphetamine interfered with his employment at the time, and ultimately, ruined many of his relationships. *Id.* ¶ 67. It also led to a long series of crimes, including a number of serious crimes, for which Mr. Ponce paid dearly. Since his early twenties, Mr. Ponce has served numerous multi-year state sentences totaling well over twenty-five years, resulting in a Criminal History score of 24 points.[1]  *Id.* ¶¶ 31-44. As with those cases, the conduct that led to this case was driven by methamphetamine, which impaired his judgment and led him to try to agree to trade drugs for cash and automobile parts. *Id.* ¶¶ 7-13. He appeared for the sale with at least 14.4 grams net of heroin and 5.6 grams net of methamphetamine—

---

[1] Mr. Ponce agrees with the Guidelines calculation set forth in the PSR.

far less than the quarter pound of methamphetamine he was supposed to sell a confidential informant, but still enough to qualify him for a mandatory-minimum sentence. *Id.* ¶ 13. He admitted possession to law enforcement after his arrest. *Id.* ¶ 12.

Thankfully, the government did not charge Mr. Ponce with a mandatory-minimum offense or seek other enhancements, and instead agreed to conditions of his release that would enable his recovery and rehabilitation. Mr. Ponce was released June 30, 2019, approximately four months after his initial appearance. ECF No. 14. He went straight to New Bridge to complete their 90-day inpatient program. He also promptly took responsibility and plead guilty on July 10, 2019. ECF No. 15. With the support of U.S. Pretrial Services, Judge Breyer referred him to ATIP on October 2, 2019. ECF No. 20. He entered the program with gratitude, but very nervous.

After two productive months at New Bridge, Mr. Ponce relapsed in late October 2019. Looking back, he feels it was a blessing. The relapse occurred relatively early in his sobriety, when he had lots of support systems in place, and before the COVID-19 pandemic had emerged. At the time, he desperately wanted to resume working at Husteads Auto Body Shop and return to New Bridge. He was upset when Judge Corley denied his request to resume working immediately so that he could instead focus on taking care of himself—a decision he now realizes was the right one. Similarly, although he wanted to stay at the Options sober living environment for just three months, Pretrial and the ATIP team required him to remain there for six months, from January to June of this year—again, the right call, he now recognizes. He eventually got back to work in February 2020.

When the pandemic prompted the cessation of many recovery services and the Auto Body shop to furlough him from work in March 2020, it was initially stressful for Mr. Ponce. He felt confined, he reports. But fortified from the assistance he received at New Bridge, Options, and from the ATIP team, he began what he describes as "inventorying"—thinking about himself, and how to improve his circumstances. Mr. Ponce wanted to find a career that (unlike the Auto Body Shop) would offer benefits and retirement options down the road. He started researching his options online to investigate the exams and vocational requirements to obtain a union job working on plumbing and heating, ventilation, and air conditioning (HVAC). PSR ¶ 70. He filled out apprentice applications and studied how to improve his credit, all the while thinking about the future. On June 30, 2020, Mr.

Ponce left Options for Pathways.  In approximately late July, he went back to work at Husteads and is now employed there fulltime.  He commented to counsel that while he only makes minimum wage, he feels good because he *earns* it.

Since his release from custody, Mr. Ponce has opened up to his family about his addiction—previously a source of shame.  He is building a stronger relationship with his daughter; he happily conveyed to counsel that she has also reached out to him on her own recently, a rewarding development.  Mr. Ponce is closer to his mother and cherishes his relationship with her, as he realizes she is getting older.  His mother and the mother of his daughter are supportive and proud of him.  He recognizes that he still has work to do to build a stronger bond with his son, who recently graduated from San Jose State and remains distant.

Thus, while there is still much work to be done, there are many encouraging signs.  It has been a big year for Mr. Ponce—he says he "can't believe everything that has happened."  In the span of ten months, Mr. Ponce graduated New Bridge Aftercare program, he finally discharged his state probation, and now he is set to graduate from ATIP.  Since working on his finances, Mr. Ponce improved his credit score to 720 and opened a bank account to save money, with the ultimate goal of achieving financial independence, perhaps purchasing a house, and retiring.  He renewed his driver's license and bought a car.  He reports that he is happy at Pathways and thankful that in recent months he has not been suffering from triggers.  He is even exercising regularly and mindful of the need to avoid working too hard.  He has learned patience and gratitude.

Although Mr. Ponce has learned to live for today, he is also thinking about tomorrow: he wants to find a partner, with whom to spend the rest of his life.

### III.   ARGUMENT

#### A.  Legal Standard.

The Court is familiar with the directives of *United States v. Booker*, 543 U.S. 220 (2005) and 18 U.S.C. § 3553(a).  The Sentencing Guidelines range is not mandatory and the Court has a duty to exercise judgment and discretion in arriving at an appropriate sentence.  Importantly, the Court may not presume the Guidelines range is reasonable.  *Nelson v. United States*, 555 U.S. 350, 352 (2009) (per curiam).  Instead, the Court must consider the Guidelines range, the nature and circumstances of

the offense, the history and characteristics of the defendant, and the need to avoid unwarranted sentence disparities among similarly situated defendants.  *See* 18 U.S.C. § 3553(a)(1), (a)(4) and (a)(6).  In crafting a sentence that is "sufficient, but not greater than necessary," to comply with the purposes set forth in 18 U.S.C. § 3553(a), the Court must also consider the need for the sentence imposed: (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; (C) to protect the public from further crimes of the defendant; and (D) to provide the defendant with needed educational and vocational training, medical care, or other correctional treatment in the most effective manner.  18 U.S.C. § 3553(a)(2).

> **B. A probationary sentence of three years is sufficient, but not greater than necessary.**

Mr. Ponce respectfully requests that the Court sentence him to three years of probation.  He submits this a sufficient sentence under the circumstances, and in connection with this request, several matters are worthy of the Court's consideration:

*First*, Mr. Ponce has taken major, life-altering steps to overcome his addiction and rehabilitate himself.  *See* 18 U.S.C. § 3553(a)(2)(D).  He has managed to stay clean for over a year, despite extremely difficult conditions during the COVID-19 pandemic, and learned from his only relapse a year ago.  He graduated from New Bridge as well as its Aftercare program, discharged his state probation, and is now poised to graduate from ATIP.  Mr. Ponce is now employed for the first time in many years, and as set forth above, he has taken great steps to improve his financial condition, his career options, and plan for the future.  He has improved his physical health and has a more mature outlook on life.  Perhaps most importantly, he has improved his relationship with his family and is looking forward to starting a relationship with a romantic partner for the first time in a long time.  A custodial sentence, of course, would disrupt these important developments for Mr. Ponce and instead risk sending him in the wrong direction.  As U.S. Probation correctly observes in its sentencing recommendation: "He has demonstrated that at this point a sentence of incarceration would have no rehabilitative benefit."

*Second*, given the nature and circumstances of the offense, additional custodial time is not

necessary to protect the public, mete out sufficient punishment, or achieve deterrence, consistent with the mandate of § 3553(a). Mr. Ponce's crime involved relatively modest amounts of narcotics, but seriously poor judgment driven by decades-long methamphetamine abuse. At the time of the crime, it was part of a very concerning pattern; and, the lengthy Guideline sentence of 77 to 96 months reflects chiefly Mr. Ponce's long criminal history. Here, however, the mere threat of such a long sentence has already served the purposes of the sentencing statute. It is worth noting that Mr. Ponce did serve almost exactly six months, from the date of his arrest in this case in January 2019 to the time of his release from federal custody in June 2019, in connection with his state probation violation for the instant conduct. Thereafter, with the possibility of a much longer term of custody looming, Mr. Ponce was set straight. He has demonstrated by his conduct for over a year that he is no longer a threat to himself or those around him and is instead an asset to his family and the community.

*Third*, and finally, Mr. Ponce submits that the term of five years urged by U.S. Probation is longer than necessary and would likely waste scarce supervision resources that are better spent on other needy cases. Mr. Ponce's probation, of course, will not resemble the supervision most defendants receive. Rather, it will be much more intensive: he will continue to check in with Judge Corley and the ATIP team regularly as well as his Probation officer and counselors. By the time, three years passes, he will have been sober for over four years (since the time of his arrest). He will be well ensconced in work and family activities and trying to build a relationship. At that point, the defense submits, further supervision almost certainly be unnecessary.

V.  **CONCLUSION**

For all of the foregoing reasons, Mr. Ponce respectfully requests that the Court sentence him to three years of probation.

\\
\\
\\
\\
\\

DEFENDANT'S SENTENCING MEMO
*PONCE*, CR 19–0044 WHO

Dated: October 29, 2020

Respectfully submitted,

STEVEN G. KALAR
Federal Public Defender
Northern District of California

/S
DAVID W. RIZK
Assistant Federal Public Defender